22-2872
*United States v. Lopez*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of September, two thousand twenty-four.

PRESENT:

> DENNY CHIN,
> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                      No. 22-2872

ALBERT LOPEZ,

> *Defendant-Appellant*.

_____

For Defendant-Appellant: Roland R. Acevedo, Law Office of Roland R. Acevedo, New York, NY.

For Appellee: Lauren C. Clark, Sandra S. Glover, Assistant United States Attorneys, *for* Vanessa Roberts Avery, United States Attorney for the District of Connecticut, New Haven, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Victor A. Bolden, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the November 1, 2022 judgment of the district court is **AFFIRMED**.

Albert Lopez appeals from a judgment of conviction following his conditional plea of guilty to one count of unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Lopez argues that the district court should have suppressed the firearm, which was seized from his mother's apartment after she consented to a search of the residence. We assume the parties' familiarity with the underlying facts, procedural history, and issues in dispute.

"On appeal from a district court's ruling on a motion to suppress evidence, we review legal conclusions de novo and findings of fact for clear error." *United*

2

*States v. Ganias*, 824 F.3d 199, 208 (2d Cir. 2016) (*en banc*) (internal quotation marks omitted). Under clear error review, "if the district court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse it even [if we are] convinced that had we been sitting as the trier of fact, we would have weighed the evidence differently." *United States v. Isiofia*, 370 F.3d 226, 232 (2d Cir. 2004) (alterations and internal quotation marks omitted). We accord "even greater deference" to a district court's findings when they are based on credibility determinations, "for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Id.* (internal quotation marks omitted).

Lopez raises several arguments on appeal, all of which contend that the seizure of the firearm violated the Fourth Amendment because his mother did not validly consent to the search of her apartment. We address each argument in turn.

*First*, Lopez asserts that, even if his mother consented to the search, her consent was invalid because officers were not legally permitted to be in the apartment when they obtained it. Although Lopez does not dispute that the officers had authority to enter the apartment to arrest him and perform a

protective sweep, he contends that they received his mother's consent only *after* their authority to be there had expired, which invalidated her consent and compels suppression of the firearm.

We disagree. The officers were, at all relevant times, lawfully present in his mother's apartment. As the district court found after a suppression hearing, the officers initially arrived at the residence to arrest Lopez on two warrants related to his role in a shooting.[1] After gaining access to the apartment with the help of a family friend who was inside, the officers handcuffed Lopez in the hallway and conducted a brief protective sweep of the apartment. Because Lopez was not fully clothed at the time, one of the officers retrieved clothing for him from the bedroom in which he was staying. Another officer began speaking to Lopez's mother, who verbally consented to a search of her residence. At that point, an officer walked outside to retrieve a consent-to-search form and passed by Lopez, who was being escorted out of the apartment at the same time – about five minutes after the officers first entered the apartment. Consent form in hand, the officer went back inside to speak with Lopez's mother, who signed the form after it was

---

[1] One arrest warrant was a state warrant seeking Lopez's arrest for allegedly shooting someone in the leg. The other was a federal warrant seeking Lopez's arrest on three violations of his conditions of supervised release, including possessing a firearm in connection with the shooting, testing positive for narcotics, and failing to participate in drug treatment.

translated to her in Spanish.   It was only then that officers re-entered Lopez's bedroom and found the firearm.

At no point in this sequence did officers exceed their authority to remain in the apartment.   The Fourth Amendment permits officers to conduct protective sweeps, *see Maryland v. Buie*, 494 U.S. 325, 334 (1990), and to retrieve clothing for suspects who are partially dressed, *see United States v. Di Stefano*, 555 F.2d 1094, 1101 (2d Cir. 1977).   And as the district court found, the officers obtained "verbal consent" to search from Lopez's mother "while Mr. Lopez was still in the apartment."   App'x at 49.   This means that by the time the officers were able to complete the sweep and escort Lopez outside, they had already received his mother's consent to search the apartment.   Although Lopez disputes this timeline – asserting that the officers "continu[ed] to . . . pressur[e]" his mother into giving verbal consent *after* Lopez was brought outside, Lopez Br. at 21 – the district court found otherwise, and we see no clear error in that conclusion.

*Second*, Lopez argues that his mother's consent alone was not sufficient to authorize the search of his bedroom.   This argument is drawn from the Supreme Court's decision in *Georgia v. Randolph*, which held that any tenant alone may authorize a search of her home, unless a co-tenant expressly objects *or* is removed

5

from the premises for the purpose of preventing a possible objection. *See* 547 U.S. 103, 121–22 (2006). Although Lopez never objected to the search of the bedroom, he asserts that officers removed him from the apartment to prevent him from doing so.

As an initial matter, it is not clear that Lopez would even qualify as a "cotenant" with authority to object, *id.* at 122, since it appears that Lopez only stayed at the apartment occasionally, *see* App'x at 49 & n.15 (observing that Lopez never registered the apartment as his residence with his probation officer and that Lopez's mother herself testified that Lopez only stayed there from time to time). But even assuming that Lopez had authority to object, *Randolph* would still require him to demonstrate that police removed him "for the sake of avoiding [his] possible objection." *Randolph*, 547 U.S. at 121. Lopez points to no such evidence here. In fact, the record reflects that the officers took the time to perform a protective sweep and retrieve his clothes, which meant that "Mr. Lopez was still in the apartment" when officers requested and obtained consent from his mother. App'x at 49. And even if it would have been "easy or convenient" to "ask Lopez whether he consented to the search," nothing obligated the officers to do so. *United States v. Lopez*, 547 F.3d 397, 400 (2d Cir. 2008). Put simply, Lopez never

6

objected to the search at the time and offers nothing more than speculation to suggest that the officers removed him from the apartment to prevent him from objecting to a search.

*Third*, Lopez argues that his mother's consent was not voluntary. Voluntariness is a "question of fact" that we review for clear error. *Isiofia*, 370 F.3d at 231. Consent to a search is voluntary when "the officer had a reasonable basis for believing that there had been consent to the search" based on the "totality of all the circumstances." *Id.* (internal quotation marks omitted). After hearing testimony from several witnesses and assessing their credibility, the district court found that Lopez's mother consented to the search of the bedroom twice: once verbally when officers first started speaking to her, and then again in writing when officers presented her with a consent-to-search form.

Lopez contends that his mother's consent was not voluntary for several reasons, including because she could not speak English, was elderly, suffered from a severe respiratory disease, and was intimidated by the presence of the officers in her home. But even with these factors in mind, we are not persuaded that the district court's findings were clearly erroneous. Although Lopez's mother had only a limited grasp of English, the record reflects that the officers spoke to her –

and received verbal consent from her – in Spanish, and that she signed the consent form only after it was translated and explained to her in Spanish as well. Nor does anything in the record suggest that the officers leveraged her "frail health" in order to extract her consent. Lopez Br. at 25. In fact, the officers offered to take her to the hospital before she consented – an offer that she declined because she only needed to take her medicine to help "calm [her] down." App'x at 42. And while the overall encounter was surely stressful, the record similarly lacks any evidence that Lopez's mother was coerced. *See id.* at 37 (explaining how officers told her to remain calm, moved her to the kitchen table so that she could more easily access her oxygen tank, brought her a glass of water so she could take her medicine, and explained the situation to her in Spanish). Given the circumstances here, we are not persuaded that the district court clearly erred in finding that Lopez's mother voluntarily consented to the search of her apartment.

*       *       *

We have considered Lopez's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8